For the record if you'd stand and identify yourself counsel And All right Kelly Reynolds Because we have a we have different here, so I just wanted to make sure that we should identify herself into the mic Yes, you should May it please the court your honors Kelly Reynolds for the petitioner Maria de Lourdes Gomez Lucero I believe that the issue in this case is quite simple and quite narrow should a petitioner Statements taken after she has asserted her right to speak with an attorney Be considered or be suppressed She asserted her right to speak with an attorney. She was told in no uncertain terms That she had no right to speak with an attorney Her statement was then taken outside the presence of her attorney and Then it was entered into evidence or it was it was entered into evidence against her in her deportation proceeding Let me ask you a couple of questions Just about the facts so that I can make sure that they are because it seems to me the facts are pretty important here Where you're really suggesting as I understand that that this Statement was induced by coercion Yes, your honor or duress? Yes, or improper action? How many times did she say I want an attorney? I believe according to her testimony only once your honor one time. Yes, all right and The response was that she didn't have a right to counsel was that the response that was the response that she was given and at That point where she that happened She was where? she was I believe in transit. It's not clear because of course the only evidence in the record that the government she She was not aware of actually where she was as she was going through the maze of offices at the border She was one could one could Basically get the idea that she's not at the first inspection. She's gone to secondary inspection absolutely, your honor if you look at page 99 of the I-213 it basically points out that she was transferred from primary to secondary to the port enforcement team and It probably took place somewhere between secondary and the port enforcement team Because and of course, it's only covered in one small paragraph on the i-213 But it was clear that it was before she was transferred. She was her statement was taken by officer Morales Was she deprived of food? Um, your honor, I believe she was she testified that she was given water was she deprived of sleep In terms of was music played to keep her awake, I don't believe What she did the thing is is that I'm trying to compare this. I mean, we're really doing a comparison here We've got some cases that would suggest what coercion is and some who aren't and we're really gonna have to make some and frankly the comparisons I've got to be pretty similar because otherwise We're stuck with Ninth Circuit precedent and we have to deal with what that night Ninth Circuit precedent is So I didn't find any place in here that she was deprived of food or she was deprived of sleep The best I had that she wasn't physically abused She wasn't given hours of interrogation In fact as I understand it She asked for counsel and that's about all that happened. And then the next morning she said here's my statement They didn't come in and question her time after time after time. Well, your honor. It's my understanding from the record although the time is not recorded by that was not recorded by the government was that her statement was taken before sunrise because according to my Client and I am not sure that this is in the record, but she was transferred about 6 a.m. To Immigration detention. So what's the what's the best threat she had? Your honor she was I mean I'm putting you think your best effort here on threats because the honest truth is the only thing that I could find is that a Say what the others say if you don't say what they say and you perjure yourself you may be in trouble certainly your honor But I think that it's extremely significant that she asked for her right She asked to speak with her attorney and that right was denied. I can't in terms of All of the light in terms of the violations that took place that I believe is the most significant and should weigh very heavily She was told well, you absolutely don't have a right to talk to an attorney Well, I appreciate that but I guess the biggest problem that I'm having in this case is this There is pretty good precedent on the books that suggests that one doesn't get an attorney in secondary inspection Certainly your honor, but in terms of she was at the port enforcement team when she well There's basically two reasons why she should have been given an attorney Of course, it's set forth in my in our brief that she was Um, it was being determined whether or not she was going to be deported or whether or not She was going to be charged with a crime. She was clearly in custody. She was kept overnight So under the regulations under 292.5 I think it's extremely clear that she did have a right to an attorney and more important. Yeah, I don't know. I Guess we'll argue about that one because I don't find anything in a secondary inspection that suggests they need an attorney during that I Mean that is something where an attorney is not it's not often I mean I can understand that one could suggest that she was in custody and therefore Under regular criminal law her statements may have been subject to Miranda But we don't even have that in this kind of a proceeding because Miranda is not applicable in these proceedings We don't we don't throw out statements in these proceedings So what we're really going under the bottom line of your argument it seems to me has to be that there was coercion and Therefore I'm trying to make the best case you can make for coercion because I've got case law I've got cases on the books That say what coercion was in those particular cases and then I've got cases on the books that say what coercion wasn't Certainly and I'm trying to harmonize if you will not just go over the board and just say well because I didn't like this And I don't know that there is one even one case that says I Want an attorney one time and that's enough Well your honor In terms of I'm not sure how many times that the court is asking that she needs to assert her right to speak with an attorney she clearly Was the vulnerable person in terms of not knowing the law here and if she asserted she didn't know that She didn't have a right to Might may not have had a right to speak with an attorney in secondary inspection and then did have a right when she was transferred to the court enforcement authority and that You know the statement that she did not have the right to speak with an attorney did not carry through she didn't She was told you absolutely do not have a right to speak with an attorney and then she gets taken to another office Well, here's my problem Whether the statement should have been admitted because they were coercively taken the standard of review is a Reasonable officer would have known that conduct violated the aliens rights. That's the standard And if I look at matter of round Ramirez Sanchez, which is a BIA 1980 case They suggest that a person alleging coercion Must make a prima facie case that her statements were obtained through physical abuse hours of interrogation denial of food or drink threats or promises or Inference with any attempt by the petitioner to exercise her rights In other words the statements must be cuddled from the alien by the government authorities Now to me this case doesn't get there Well, your honor if you one of the things that was stated in Ramirez was an interference with the alien in her attempt to exercise her rights and That has been actually a matter of Garcia that was even extended and the board the board Actually, the board said that if a regulation is promulgated in to set forth rights that are derived from the Constitution then admission of statements taken in taken in violation of that regulatory right would be fundamentally unfair and matter Garcia Um the court specifically held that the in order to determine whether or not a Statement was coerced you a court must look to whether or not There was any any interference with the alien in an attempt to exercise her rights so In terms of yes I realize that we do not have an exclusionary rule in immigration court proceedings and the standard is whether or not the statement was taken Through coercion and so one difference. I see it between this case and Garcia is that he did ask several times for a council Well, absolutely, but the question is how many times when somebody is told somebody in understand that I'm just pointing out that there is that Certainly your honor and my client didn't stand on top of the table or anything like that and demand her counsel. She took it as True from the officer that she had no right to speak with an attorney and I think that her oh, I'm sorry My time is up. Well, thank you very much for your argument. We've appreciated you two times Thank you. It was my pleasure May it please the court Eric Marsteller for the Attorney General I'd like to begin by pointing out that we believe that Miss Gomez had no right to representation when she was told that she in fact had no right to representation We believe she was it the record reflects that she was at secondary inspection at the time When she asked the question, it was at 10 o'clock at night at the evening. She was Intercepted at the border And she told an officer she wanted an attorney and the officer said you have no right and we believe that was a correct decision Pursuant to the regulations because she was in secondary inspection at the time and was not being subject to a criminal investigation Also agree with your honor that there is no evidence of coercion here the Miss miss Gomez was asked before she made her statement whether her statement was free and voluntary and she said that it was in fact free and voluntary She was detained. She was kept in a room overnight But there's no evidence that she was mistreated in any way And the interview was conducted early in the morning How many hours was she held before the interrogation took place? I believe she was I Believe she was initially brought in at the border in the afternoon on October 12th She had a first an initial interview that evening at about 10 o'clock I believe and then she had the videotaped interview at 6 a.m. The next day so that would be how many hours so from the time she probably less than about I'm guessing 18 hours or so Big I may have been less than normal. I mean that seemed that to me does not seem like What one would do in these situations? 18 hours Well, I think part of it I mean that to me is part of the coercion that counsel can argue about part of 18 hours sitting there waiting for somebody to Do something part of that is hold. She can't have an attorney maybe even for a good reason Well, we as I mentioned we've she didn't have the right to an attorney So I say maybe even for a good reason the 18 hours two hours you have to take into account your honor that And That she was initially detained at 330 then she had to go to inspection there This is the busiest border crossing in the world and So it takes time to get people lined up and then when it became evening you I mean I think it was reasonable to let her sleep the night sleep overnight instead of keeping her awake all night waiting for an interview Well, what they do is put her on a hard bench in a cold room She doesn't know what's going to happen. They don't say well look we can't get to you really until tomorrow From her mentality. She might think she's going to be on that hard bench For how long she doesn't know I? Actually, I don't know if that's supported by the records your honor I don't think there's evidence that she said she didn't know I don't think there's evidence that she asked the immigration officials What the schedule is evidence that they left her alone there? But they met with her at about 10 o'clock in the evening for some duration So then they took her back to the room at some point after that and got her again at 6 a.m. So it's it's not and there's there's no evidence that they told her go sit in this room for three more days before we get to You there's nothing like that. It's no they just didn't In some certainty put yourself on that bench. I agree. It would be an uncomfortable situation your honor, but So we're just trying to decide Whether there's enough here that we would think that She was in a situation where she felt coerced to give a statement. I mean that that's the issue And that's right your honor And we believe that the the record evidence does not compel the conclusion that that discomfort that would be caused by being in the room Overnight is sufficient to amount to coercion the reason we're asking for coercion is did this alien feel they were forced to make a statement So it really is Kim is I mean, it's really is there a source of unreliability potential unreliability in the statement based on the actions the Alleged coercion we believe that in this case There's no reason based on the circumstances or the record would not compel based on the circumstances that she felt coerced to give a false statement her statement to the immigration officer was that she knowingly used Her child birth certificate to bring in Undocumented aliens and there's no reason to feel that the the government's treatment would have Coerced her into lying about that or giving a false statement And so and so we believe that's really the ultimate answer here Is that the the record does not compel the conclusion that she was coerced under the facts of this case? this you may be accurate in this but We always get the feeling that our government could behave a little better I Think in in in many ways in any large organization There's always ways that the large organization could behave in in a more efficient effective way, but or a more humane way In in some circumstances your honor. Yes. I'd also like to point out the matter of Garcia case, which petitioners council has mentioned That case is substantially different from the present case in that case The the board found that an i-213 should be excluded because it wasn't given voluntarily And that was the case where the man was detained at an Oregon farm told go grab your things because we're about to deport you He tried to ask for an attorney and they rubbed the phone number of the attorney off of his arm before he could give it To someone that case is substantially different for a couple reasons one the the coercion there the the what was greater Secondly mr. Garcia had the right to an attorney because he was not at primary or secondary inspection He was inside the United States at an Oregon farm Language here in the case is that he'd given up all hope of being able to talk with his attorney She was told she had no right to an attorney can we say that she had Given up hope that she could talk to an attorney. I mean, it's pretty close The substantial difference though is that Garcia had a right to an attorney and and miss Gomez did not have a right to an attorney at that point She took it as meaning. I Don't have a right to an attorney Well, and she wouldn't have a right to an attorney until after she was out of primary secondary inspection She I mean, I understand it's a difficult situation because she's not naturally gonna ask for clarification But but the statement made by the deportation officer was completely at all in terms of which room she was in if if she'd gotten over to the Last room and had asked and they'd said you don't have a right to an attorney Then she'd be all right Would be cool. I'm not sure. I'm not sure even the last room in this case. She would have had the right to an attorney The the primary and secondary inspection as the the board and They had a right to an attorney at the time that they were interrogating her, isn't that right? I don't think it is your honor We believe that that was still part of the secondary inspection process Did she never got out of secondary that that entire time? There was the I mean if you look at the i-213 set primary and secondary inspection, the purpose is to determine well secondary mostly to determine whether someone's admissible the Miss Gomez based on the the facts that she Relayed was not admissible in the United States. So we believe that that was still part of the secondary inspection process I'll keep a person in secondary for 18 hours. I believe you can your honor And actually I think was a little I've been doing my math my head I think there's a few hours less than that, but but yes, you can where's the line between secondary and Having determined to I I'm not entirely certain on the exact point of the line. I can find that out for you your honor if you'd like But but we just assumed that she was out of secondary here But I believe she was but even if she wasn't As I noted earlier when she asked for an attorney, she was certainly still in secondary And and so therefore the the deportation officer did not give inaccurate information when he said she did not have a right to an attorney at that time Unless the court has further questions Thank you very much And I expect counsel used all her time. So this case Gomez Lucero versus Mukasey is submitted His myth miss CIT H-a-m-t-r-l here sime Scythe me or Scythemal or whatever Mike you may want to go see if you can find her someplace She's in this guy Aguiar Gonzalez versus Mukasey All right, we will call then case oh first of all, I guess I should say case oh six seven two eight one eight Gomez Lucero versus Mukasey is hereby submitted and now we'll call case. Oh six five six three seven. Oh Sat versus JP Morgan chase and company
judges: Fletcher, Smith, King